378

# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Danny Cox

March 16, 2012

Case No. 11-85-1

By Judge Edward L. Hogshire

Defendant Danny Cox, having been indicted for embezzlement, has filed a Motion to Suppress his statements made to Officer Matthew Flanary of the Baltimore County Police Department while being transported to jail. Defendant asserts that these statements were made in response to custodial questioning conducted in violation of his constitutional right against self-incrimination under *Miranda v. Arizona*, 384 U.S. 436 (1966). The motion was heard at an *ore tenus* hearing on August 1, 2011, with the only issue remaining for resolution being the admissibility of Defendant's statements to Officer Flanary. Having considered the evidence presented, along with legal memoranda and the arguments of counsel, for the reasons stated below, the Court will deny Defendant's Motion to Suppress.

### Statement of Facts

The facts adduced at the evidentiary hearing revealed that, on June 13, 2009, Defendant was arrested by Baltimore County Police Officer Matthew Flanary at the Golden Corral Restaurant in Baltimore County, Maryland. *Motions Hearing Transcript*, 61-62, August 1, 2011. Prior to the Defendant's arrest, he provided an inculpatory statement admitting that

he had taken company funds from the Golden Corral restaurants in both Baltimore County, Maryland, and Charlottesville, Virginia. *Id.* at 4, 64. Defendant's written statement acknowledging the wrong-doing was given to restaurant managers Amir Sarshuri and Kathie Sewell at the company office in the restaurant in Baltimore. *Id.* at 64. Shortly thereafter, the police were called, and Officer Matthew Flanary responded to the restaurant. *Id.* at 50.

When Officer Flanary arrived, Ms. Sewell reported what had happen to the officer out of the Defendant's range of hearing. Ms. Sewell and Officer Flanary then walked into the office where the Defendant was sitting. *Id.* at 51. Officer Flanary did not immediately arrest the Defendant, and he did not engage in any physical contact with him. *Id.* at 52. At some point shortly thereafter, Officer Flanary asked the Defendant for his identification, and the Defendant handed him a Missouri driver's license. *Id.* at 67.

Ms. Sewell testified that, during this interaction in the office at Golden Corral, she heard Officer Flanary "read Danny his rights." Ms. Sewell does not recall any of the specific language, but she does remember Officer Flanary "ask[ing] Danny twice did he understand." *Id.* at 53. Mr. Sarshuri testified that Officer Flanary "wasn't reading his rights on a paper. He was telling his rights" to the Defendant. Mr. Sarshuri recalls that Officer Flanary "mentioned something about an attorney, he can have an attorney, and Danny was telling him that he knows that and they went through it." *Id.* at 21. Officer Flanary, on the other hand, does not recall advising the Defendant of his rights during this interaction. *Id.* at 71. The Officer's usual practice is to read the Miranda rights off a form that he carries "just so that no word is missed," but he does not remember doing so in this instance. *Id.* at 77-78. Furthermore, when Officer Flanary reads from the Miranda form, it is part of his usual practice to "have [the individual] initial it or . . . initial each line to make sure they understand that right and then [both he and the suspect] sign it at the bottom, date and time." *Id.* at 84. Officer Flanary does not have a documented Miranda form from this incident, and he testified that, "at that point . . . I did not feel it was necessary." *Id.* at 77. Officer Flanary has no recollection of the Defendant's having waived his Miranda rights. *Id.* at 85.

After asking to see the Defendant's license, Officer Flanary handcuffed the Defendant and placed him in the patrol vehicle. *Id.* at 71. The officer stated that it is the Baltimore County Police Department's policy to take out-of-state suspects immediately into custody as they present a heightened flight risk. *Id.* at 69. While on the drive to the police station, Officer Flanary engaged in "general conversation" with the Defendant, which the officer described as being part of the his normal protocol to help individuals in custody remain calm. *Id.* at 69, 71. During this conversation, Officer Flanary "ask[ed the Defendant] where he is living" and "why [he is] working up here [in Baltimore]" when he has a Missouri driver's license.

The Defendant replied that he is working in both Baltimore County and Charlottesville, that he "was going through some financial hardships," and that "he would pay anything back." *Id.* at 72.

Officer Flanary did not mention any of these statements in his report, testifying that "at that point, [he] did not want to go too further in [sic] without reading him Miranda, and being that [he] did not recall or have the documentation that [he] read him Miranda." Flanary explained this omission by stating that he did not want "to put any statements that were made or anything of that nature just for any kind of technicality." *Id.* at 73.

## Issue Presented

The question presented to this court is whether the questions asked of the Defendant by Officer Flanary in the patrol car constitute a custodial interrogation and elicited incriminating information in violation of the Defendant's Fifth Amendment rights as set forth in *Miranda v. Arizona*.

## Analysis

Defendant argues there is no evidence supporting a finding of an advisement and waiver of his *Miranda* rights. Furthermore, the Defendant maintains that the questions asked by Officer Flanary constitute a custodial interrogation since a reasonable observer would have believed that these questions were designed to elicit incriminating information and that they do not fall under the routine booking exception. Lastly, the Defendant contends that, without a valid advisement and waiver of *Miranda*, his statements in response to Officer Flanary's questions must be suppressed. The Commonwealth counters that the Defendant's statements are admissible because he did properly receive and waive his *Miranda* rights, or, in the alternative, even absent the advisement of rights, Officer Flanary's questions did not constitute a custodial interrogation. In any event, argues the Commonwealth, the Defendant's statements fall under the routine booking exception as relates to the duty to provide Miranda warnings and were in response to questions not designed to elicit incriminating information.

Under the Fifth Amendment of the United States Constitution, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In order to safeguard this right against self-incrimination, prior to custodial interrogation police officers must first give a *Miranda* warning informing criminal suspects of their right to an attorney and their right to have that attorney present during any interrogation. *Miranda*, 384 U.S. at 469-73. In the event that a police officer has begun custodial interrogation without informing the suspect of his rights under *Miranda*, any statements made by the suspect are subsequently viewed as coerced and inadmissible. *Id.* at 444-45. In the determination of whether

an encounter between a police officer and a suspect constitutes custodial interrogation, courts have looked beyond basic elements such as police questioning and the fact of custody. *See Commonwealth v. Quarles* 283 Va. 214, 720 S.E.2d 84, 88 (2012) (citing *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980)). Instead, courts must determine if the interrogation "reflect[s] a measure of compulsion above and beyond that inherent in custody itself." *Id.* (quoting *Innis*, 446 U.S. at 300.) This inquiry into the presence of compulsion "focuses primarily upon the perceptions of the suspect," and whether the police officer should have known that his question was "reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. Despite this focus, however, the Supreme Court of Virginia has emphasized that officers' questions and statements that are "not out of the ordinary based on the circumstances" do not rise to the level of compulsion required for interrogation under *Miranda. Quarles*, 720 S.E.2d at 89.

In the matter at hand, both parties agree that the Defendant was in custody when he and Officer Flanary were in the patrol car. The crux of this analysis is whether Officer Flanary's questions regarding where the Defendant was living and why he was working in Baltimore meet a "measure of compulsion above and beyond that inherent in custody," from the Defendant's perspective. *Id.* at 88. Officer Flanary offered these questions while he was driving the Defendant to the police station with the Defendant handcuffed and seated in the back of the patrol car. *Motions Hearing Transcript*, 71-72. But despite the custodial setting, the two questions asked by Officer Flanary were biographical in nature and generic in scope. Given the circumstances, it was reasonable for the police officer to ask general, conversational questions of the Defendant while driving to the police station. In fact, Officer Flanary's questions here were even less suggestive and inciting than those in *Commonwealth v. Quarles. See Quarles*, 720 S.E.2d at 86 (where the defendant's admissible confession was in response to a detective's statement, "[T]hat's fine if he doesn't want to talk to me. I wasn't the person who robbed a white lady and hit her in the head with a brick."); *compare Ferguson v. Commonwealth*, 51 Va. App. 48, 63 (2007) (where detective's explicit questions regarding the crime scene were deemed custodial interrogation). Given the circumstances, as well as the conversational and generic nature of Officer Flanary's questions, the officer's questions at hand do not rise to the level of compulsion required for a custodial interrogation; accordingly, the Defendant's statements made in response to Officer Flanary's questions are admissible.

On the premises set forth above, Defendant's Motion to Suppress will be denied.